## GREEN BRUMLEY *v.* THE STATE

1. MALICIOUS MISCHIEF — INFORMATION.— Within the meaning of article 684 of the Penal Code, a tenant in possession of leased premises is the owner thereof until the expiration of the lease, and an information for wilfully pulling down a fence thereon, which alleges the property to be in the lessor, is not sustained by proof that it was under the control and management of the lessee.
2. SAME.— EVIDENCE held insufficient to show want of the 'consent of one of the alleged owners.

APPEAL from the County Court of Denton. Tried below before the Hon. C. C. SCRUGGS, County Judge.

The opinion states the nature of the case. A fine of ten dollars was imposed by a verdict of guilty.

A. M. Cochran testified for the State that he knew the defendant. He was also acquainted with Bob and Elizabeth Ervin. They reside in Denton county, some six or seven miles east from the town of Denton. They own

the farm of which the fence is alleged to have been. pulled down by the defendant. The fence was in good repair on the 29th day of November, 1881. The farm was then in the possession of Bob Ervin, and he and the witness controlled and managed it. The defendant was. charged with and did pull down the fence, and turned his. cattle into the field. The fence was pulled down in two or three places. Ervin had wheat sown in the field at that time. The witness did not give the defendant permission to pull down the fence and turn his cattle in the field.

On being cross-examined the witness said he did not see the defendant pull down the fence. He did not directly, of his own personal knowledge, know that the defendant did pull it down. He did not see the defendant pull it down, but a very reliable man told the witness that the defendant did it.

Bob Ervin testified for the State that he and his mother, Mrs. Elizabeth Ervin, owned the farm which the defendant injured by pulling down the fence on the 29th day of November, 1881. The witness saw the defendant driving his cattle in that direction, and asked him what he was going to do, and the defendant replied that he was going to turn them into the field. The witness told him that he could not do so. The defendant swore that he would turn the cattle in the field. The witness again forbid him, and he replied that if the witness prevented him then, that he would return that night, pull down the fence and turn the cattle in the field. He told the witness that one McIntosh would be at his house that night, and would assist him to pull down the fence and drive the cattle inside. The witness had wheat sowed in the field at that time. McIntosh was a sub-tenant under Wetsel, who rented the land from the witness and his mother. He, McIntosh, had gathered his crop of cotton and left the place, and the witness had his permission to sow the

ground he sub-leased from Wetsel, in wheat. The witness had control of the place which belonged to him and his mother. He did not know that his mother ever gave the defendant permission to tear down the fence, but he was satisfied that she did not, as she exercised no control over it whatever at the time. The witness did not give such consent to the defendant.

The morning after the witness had forbidden the defendant interfering with his fence, he found it pulled down apparently from the outside. If cattle had pushed it down the rails would have been thrown inside, whereas they were pulled to the side from the outside. At the place where the fence was broken, the witness found the tracks of some person, but could not swear that they were the defendant's.

Riley Wetsel testified that he knew the farm in question, and knew the defendant and Bob and Elizabeth Ervin. The fence around this farm is the one the defendant is charged with pulling down. It is Elizabeth Ervin's homestead place, and was in the possession of the witness when injured. The witness had leased it for the year 1881, and his time was not up until January 1st, 1882. The witness sub-leased 50 acres to McIntosh, this contract providing that McIntosh's rental interest should subsist only until he had gathered his crop. After McIntosh gathered his crop his control or interest in any part of the premises expired. The witness did not give Bob Ervin permission to sow wheat on the land sub-leased to McIntosh, though he knew that he did sow the wheat; to which the witness made no objection. The witness did not give the defendant or other persons permission to tear down the fence and turn cattle into the field.

*Marshall Fulton*, for the appellant.

*C. Edmondson*, for the State.

Willson, J.    The *information* charges that the defendant "did wilfully, without the consent of the owner, pull down the fence of Elizabeth Ervin and Bob Ervin, said fence being then and there the property of the said Elizabeth Ervin and Bob Ervin."

The evidence shows that the premises enclosed by this fence, at the time the fence was pulled down, were in the possession and under the control of one Riley Wetsel, who had rented the same for and during the year 1881, and whose lease thereof had not expired at the time of the act complained of.    By virtue of this renting contract, Wetsel was the legal owner of the fence in question until the first day of January, 1882, and, therefore, there was a material variance between the allegation in the information and the proof as to the ownership of the fence at the time it was pulled down.

But, if there was no such variance, we still think the conviction could not stand, because there was no sufficient proof of the want of consent on the part of Elizabeth Ervin, one of the alleged owners of the fence.    She was not called to testify in the case, and her absence was not accounted for; and her want of consent to the pulling down of the fence is not even circumstantially established.

The judgment is reversed and the cause remanded.
*Reversed and remanded.*